Good morning, Your Honors. Good morning. May it please the Court, Gonzalo Zabaios for Appellant Hydro-Pro Dutch Harbor. I'm going to discuss a little bit... Mr. Zabaios? Zabaios, yes. Zabaios. Could you make it really clear to us, the case is so complex it's easy to get mixed up. Make it really clear to us exactly what's left of it in terms of what somebody wants and isn't being allowed to get and is appealing. Right. Well, that's exactly where I wanted to start. What Scanmar wants to argue here and what the District Court, we say, got wrong was that the determination... Hold on. You're Hydro-Pro Dutch Harbor, right? Hydro-Pro Dutch Harbor, yes. Is what's at issue... I can't remember at the moment. Every time I get it in my head it goes out. What's at issue is... What's left, what Hydro-Pro wants from Scanmar or what Scanmar wants from Hydro-Pro? No. What's left is what Scanmar wants from Hydro-Pro. And how much money does Scanmar want from Hydro-Pro? The District Court had it, I think, around $140,000. I don't remember the exact number. Is $300,000 the claim or is that what was awarded? Okay. I'm sorry. $300,000. I apologize for that. It's my understanding, just following up on that question, that frankly, the reason you're here is because summary judgment was issued on those two claims, Kyner claims, against your client. That's correct. But you have abandoned your own claims against the other party. That's correct. The only live claims right now are the tortious interference claims and the breach of duty and good faith claims under Washington law. And whether summary judgment should have been granted. Right. Well, whether summary judgment should have been granted on a sua sponte motion applying collateral estoppel to the arbitral award. I thought what you just said, that all that's left is what Scanmar wants from Hydro-Pro Dutch Harbor, meant that those state law tort claims by Dutch Harbor against Scanmar were not before us. That's correct. Those are the claims Scanmar has against my client. Tortious interference and breach of good faith and fair dealing are Scanmar's claims against my client, Hydro-Pro Dutch Harbor. They're counterclaims, right? They're counterclaims. That's right. But they're the only live claims in the action right now. Correct. Okay. So now what Scanmar is arguing and what the district court found, what we say incorrectly, is that the determination of the issues in the arbitration precludes my client from raising a defense to the issues pertaining to Scanmar's counterclaims in the district court action because those issues were already determined in that action. But the problem is the arbitration and the district court involve very, very different things. They involve different causes of action with different elements arising under different systems of law with different facts at issue. That's my understanding, just to try to put it in perspective. It's also my understanding that you sought to intervene in the arbitration, which was with a sister company, let's suggest, and you were not allowed to intervene. That's right. In fact, the only one that was there, if anyone, protecting your interests, was the president of your company who was sitting there? Correct, Ed Ramberg. And the problem there is that the claims in the arbitration is really only one claim. It's a breach of contract claim on a written distribution agreement between HydroPro Inc., which is the sister company, which I'll refer to as HPSI. And then, well, that was the only claim, and that claim arises under Norwegian law. And the only issue for the arbitration to decide was did HPSI breach that written distribution agreement with Scanmar? And if so, what damages was Scanmar entitled to as a result of that breach? Are we interpreting Washington law here? Yes, we're interpreting Washington law on tortious insurance claims. Your opponent agrees? Well, that's what he's asking for. That's what the U.S. says. I'm just trying to make sure because some of his arguments didn't actually go to that. But we're really then interpreting Washington law as to the preclusive effect of the arbitration award. Right. And the subject matter concretely is Scanmar's claim that the Dutch Harbor Company tried to talk customers out of dealing directly with Scanmar and instead to deal through the Dutch Harbor Company. Right. Okay. Right. And so in the district court action, well, in the arbitration court, let me just say what the findings were of the arbitration, what issues were resolved. The issue resolved was that there was a breach of the written distribution agreement. And then the damages were based on three things, lost sales, lost future sales. I think the breach was that the Washington Company, the Dutch Harbor Seattle didn't pay its bills. That's right. And didn't maintain an adequate inventory, right? That's correct. That's correct. Doesn't seem to have anything to do with the claims against Dutch Harbor. That's right. It has nothing to do with it. And then in a tortious interference claim, tortious interference claim has five elements to it. You have to show the existence of a valid contractual relationship or business expectancy. You have to show that defendants had knowledge of that relationship. You have to show an intentional interference inducing or causing a breach or termination of that relationship or expectancy. And you have to show that the defendant interfered for an improper purpose or used improper means. So right off the bat, you've got a whole bunch of issues that just weren't before the arbitrator. The arbitrators were only looking at breach of contract. Well, you can have breach of contract. It can be a good faith breach. In this case, HPSE ran out of money. They couldn't pay their debts. There was no showing that it was a bad faith breach that they were trying to get out of the agreement. The arbitrator didn't need to get to that. All the arbitrator needed to find was that there was a breach. Would it even matter? What I'm thinking is you could give preclusive effect. There's a question whether it would be proper to do so since the Dutch Harbor Company wasn't allowed to participate in the arbitration and it's a different corporation with different ownership. But even if it were not, I'm wondering if preclusive effect would even matter because the arbitration establishes that the Seattle Company didn't pay its bills, didn't maintain adequate inventory, and that just has nothing to do with whether the Dutch Harbor Company tried to talk customers out of buying direct from ScanMar. Right. Well, what's even more curious here. That's why I was trying to get this concrete. Right. And that's exactly right. Do I understand that? You absolutely have it correct. And what's even more interesting here is that the damages or the causation that ScanMar is claiming is lost sales resulting from these purchase orders, that it claims my client sent delayed and bundled improperly that caused them the loss of those sales. Right. But the problem with that argument is that the arbitrator did address that issue. The arbitrator found that HPSE had submitted at least four of those 13 purchase orders back in October and that ScanMar rejected them. And ScanMar rejected them because HPSE was in default. And then HydroPro Dutch Harbor submitted the same purchase order separately and an additional nine, I believe. So I think there was 13 total purchase orders. And ScanMar rejected them as well. And why did they reject them? They rejected them, at least the HPSE orders were rejected because HPSE was in default. And they rejected the HydroPro Dutch Harbor orders because they were in default. But since you've weighed your claims against ScanMar, we don't really care whether ScanMar was in the wrong and wronged the Dutch Harbor Company. Is that correct? Absolutely right. And I'm not saying they're in the wrong. What I'm talking about goes to causation. Because what's critical here. My worry is that if you get into that, aren't you saying that the arbitration award somehow did have your exact things well in mind and did make that determination? Not at all, Your Honor. I mean, it seems to me that what you really should be arguing is that the arbitration award didn't talk about these claims, that they didn't go forth in these claims. And therefore, there's no way that this district judge could have given preclusive effect to an order that didn't even talk about the claims. That's absolutely right. But there's a difference between claims and damages. And the only point I'm trying to make is that in assessing damages, what the arbitrator said was that ScanMar was justified in rejecting those purchase orders because those purchase orders because of the breach. That isn't going to have any preclusive effect either, is it? No, I'm not arguing that it has. Just to be clear, I'm not arguing that it should have preclusive effect. What I'm saying goes to identity of issues. I understand. But all I'm trying to say is it seems to me if you really want them to have to take that into court again, there's no preclusive effect. That's absolutely right. And that's what we argued in the district court, that there was no preclusive effect, that the arbitration award should have no preclusive effect because it involved a case under Norwegian law that only involved breach of contract. And the only time these purchase orders come up is in the damages calculus. So... I'm really having a tough time with your reasonable notice, if you want to say anything about it. Sure. I mean, how many times did the district court say, hey, what's the preclusive effect here? Why don't you brief a little bit about it? Why don't you see what the deal is here? Well, on reasonable notice... It doesn't seem to me that the district court could have been less clear. I mean, he was going to get there, and he said, you better get on your stick and say something about it. And he said that two or three times. July 2010, September 2010, and again in February 2011. That's right. But, Your Honor, in the September 20th order, what the district court specifically says is that they're going to address the issue of whether our claims should be denied and whether Scanmar's claims should be denied. And then in February 6th, the district court says, I got it wrong. Now, Scanmar argues that the district court's September 20th order put us on notice by saying that there was an identity of issues, and they say that in their opposition to page 8. But they're wrong in their brief. They cite to page 4 of the appellate record, and the appellate record is the February 6th order, which is what this is all about. If you look at the September 20th order, the September 20th order says that Scanmar's tortious interference claims failed because the arbitrator already awarded Scanmar any damages it could obtain on this claim. It awarded Scanmar damages for any lost sales from the purchase orders, as well as lost future sales in 2008 before Scanmar was able to install a new agent in the region. Scanmar points to no other damages to which it could be entitled for tortious interference. The same is true for its duty of good faith and fair dealing. So what the September 20th order is saying is that the quantum of damages is the same. It's saying that the damages Scanmar sought in the arbitration are the same as the damages they're seeking in the district court. But that's a big difference from saying that the issues are the same. And what the district court got wrong is that it assumed that because the damages were the same, that the causes of action were identical as well. And there's no analysis in the district court's order that the causes of action were the same or that the issues were the same. Do you want to save any? Yes, I would like to save three minutes for rebuttal. Okay, very good. Your timing is good then. Thank you. Okay, let's hear then from the Scanmar counsel, Mr. Congleton, I guess, right? Good morning, Your Honors. John Congleton, counsel for Appellant Scanmar. Could you help me on something? Yes, sir. I can't see why the arbitration result would have any effect on this for two reasons, and I want you to educate me on why the reasons that occur to me are mistaken. One is that the Dutch Harbor Company tried to intervene in the arbitration. Scanmar successfully opposed its intervention, and it really is a different company. It's a separate corporation, and the ownership is different. Some fellow, I think his name is Tillotson or something, owns 30 percent of the Dutch Harbor Company but doesn't have any ownership in the Seattle Company. That's one thing. And the second thing is it looks to me like the arbitrator didn't decide whether Scanmar is entitled to money from the Dutch Harbor Company for interfering in its direct dealings with the fishermen. Instead, it decided whether the Seattle Company had failed to pay its bills and failed to maintain adequate inventory. So I'm having trouble seeing why the judges resting the case on the arbitration result is appropriate. Educate me on what I'm missing here. First of all, the parties are Dutch Harbor and Seattle, and they have been held by the district court to be sister companies. We are not bound by what the district court held. It did not have a trial, so it was not possible for it to make findings of fact. We are reviewing de novo. So the district court's decision has no authority. The Dutch Harbor Company and the Seattle Company are sister companies. They have the same- You mean sister. Sister company. It's a word of art. I'm familiar with corporate terms of art, and it looks to me as though there's no showing here that they are not both bona fide corporations. There's no showing that would enable a piercing of the veil, and there is a showing that they have different ownership. What am I missing there? What do you mean by sister that would make those things irrelevant? The Seattle Company is 100% owned by Ramberg. The Dutch Harbor Company is 67% owned by Ramberg, 33% by Tillman. Yep, that's what I said. I would agree with you that the two companies are separate and distinct, but as the trial court found or determined in the July 2010 order, while these two companies may very well be separate and independent companies, for purposes of litigating their disputes with SCANMAR, they are operating as a single institution. How can that be justified on the record, that separate corporations, separately owned, operating in separate places, even though they share the same president and they obviously work with each other on the telephone all the time? In the September 20, 2010 order, the trial court determined that the arbitration award had preclusive effect on the claims of Dutch Harbor. You keep using what the district court decided as authority as though it bound us, but what we're doing is reviewing it to see if it's right. I would not suggest that you're bound by it except for the fact that in dismissing their claims, the reason why they dismissed their claims, they stated, for the reasons stated in the court's September 20, 2010 order. But the problem, let's take that then. I gather you're going down the virtual representation route. Is that what you're saying, that even though there were separate entities here, that they conducted themselves in such a way that there was virtual representation? There is recognized, as the court is aware, there are recognized exceptions to the virtual representation. And is it your contention that this record shows that under Washington law, there was such virtual representation? Yes, for three reasons. One, the closely related companies, they were, in fact, closely related. That's in page one of the brief. And the footnote cites extensively the relationship between the two companies. Secondly, and this is very, very important, there was substantial participation in the arbitration by Dutch Harbor. It is true that in the preliminary ruling, the arbitrator excluded Dutch Harbor because it was not a party to the distribution agreement. Nevertheless, in defiance of the arbitration's order, Dutch Harbor participated in the arbitration. What do you mean by the word participated? Participated. What do you mean by the word participated? What did they do? Okay. The president of Dutch Harbor testified. The vice president. The president of Dutch Harbor is the president of Seattle. Yes. The vice president of Dutch Harbor, who has no affiliation with HydroProSeattle, testified. And more importantly. Was that Tim Tillerman? Tim Tillerman, yes. And more importantly, I think this is a piece of evidence. You say testified. Who called him and what did he testify about? He was called by HydroProSeattle. More importantly, there is the Tim Tillerman Declaration, a critical piece of evidence, which is never referenced in any of the briefs presented by this side. The Tillerman Declaration was submitted to the district court. It's 92 pages and it sets forth Tillerman's position regarding Skidmore's counterclaims, the Dutch Harbor position. This was prepared by Seattle Council. It was filed with the Seattle court in connection with the summary judgment. Basically, Dutch Harbor had discovered of Skidmore's counterclaims. I filed a motion for summary judgment saying. Wait. You're saying that Tillerman's declaration filed in the summary judgment proceedings gives the Dutch Harbor Company virtual participation in the Norwegian arbitration proceedings? You're going to step ahead of me. After it was filed here, after being prepared by Seattle Council, mindful of affirmative defenses, mindful of all the discovery, addressing completely Dutch Harbor's position relative to the counterclaims, it went from Seattle Council to the Oslo Council for both Dutch Harbor and Seattle, and was filed in the arbitration. And the arbitrator, in section 5.5 of the award, even discusses the Tillerman Declaration and credits some of his testimony. So what? Did the Dutch Harbor Company file a brief asking for damages, and did ScanMar file a brief asking for damages against the Dutch Harbor Company and get a decision on those claims from the arbitrator in Norway? No, Your Honor. The common issue. I mean, calling somebody as a witness, people call third-party witnesses all the time. It was not only the testimony of officers and owners who were, in essence, participating de facto, but you do have the presentation of the declaration, and in essence HydroPro Seattle was presenting the claims of HydroPro Dutch Harbor. You say in essence. With respect, counsel, it seems to me you're being very cavalier with the existence of these different entities. The fact that you can have a common officer who speaks to certain issues does not per se, unless there are a lot of other elements involved, give you virtual representation under Washington law. I see where you maybe make one of the elements, but I confess I'm at a loss to see how you can just say, well, this, you know, the Tillerman had a declaration and he was an officer in both, and therefore both are involved. That's not the way the law works. That's my confusion, too. Piercing the veil is a difficult thing to do, and corporations don't have to have a Chinese wall prohibiting communication and prohibiting witnesses from testifying or else get the veil pierced. May I suggest that counsel for Dutch Harbor consented to the finding by the district court of privity in the September 20 order. We consent. What do you cite in the record for that? Page five of the record, which is the district court saying. I'll be very straight with you. I have a tough time given the standard of review on a summary judgment to go as far as you're suggesting. I mean, first of all, I have to give every benefit of the doubt as to whatever happened in this situation to the opposition. Now, I can understand your arguments, and I can understand even your arguments you made in your brief as to what you think happened. However, since I can't believe what you tell me, I have to look at the facts as they are and give every reference, every deference, every opportunity to the opposition side of what happened in those particular situations. I can't just jump to the conclusion that because you've said it, it's correct, and that's what worries me about the district court order here. Give them every benefit of the doubt to every fact that has been suggested and then suggest there's privity. I can't do it. Give them every benefit of the doubt as we're supposed to and look about the same issue. I can't get there. I don't know when tortious interference really has been determined. I can't even come to the benefit that breach of good faith and fair dealing would have any part of it. I mean, that's my worry is that I appreciate your argument, but it seems to me that both you and the district court have suggested we'll see it our way. We won't give every benefit of the doubt to the opposition party. The only response, and I hate to repeat myself because I have an abiding respect for the court, but at the end of the day, counsel said to the court in a one-page brief that for the reasons stated in the September 20, 2010 order, you may dismiss our claims. For the reasons stated, and the court on that basis. Their claims. Their claims. But they're not appealing on their claims. They're not even here for their claims. They're here to fight your claims. I read that, and I tried to weasel out of that, that they then agreed to your claims, but I couldn't. I just looked at page five of the record that you cited me to when I asked you about this, and you said Dutch Harbor consented to privity, page five of the record. But page five of the record is not anything by the Dutch Harbor Company. No. It's the district judge. That's correct. It says that the Dutch Harbor Company was the Seattle Company's privy. Your Honor, in the record, page 71, is the plaintiff's statement that the claims may be dismissed for the reasons stated in September 20, 2010? You mean Dutch Harbor's claims against ScanMar? ScanMar. But Dutch Harbor has told us in its brief and today that they are not appealing the dismissal of their claims against ScanMar. So I don't see why that matters. I would just ---- I don't see why it helps you. Okay. The only place I see the help is that there is acceptance of the court's findings. Putting aside the party issue and the privity issue for a moment, I gather you contend that the arbitrator decided that Torsh's interference and breach of duty good faith claim. Is that right? No. Okay. Well, if they didn't decide it, then what's the conclusion? Those are the issues, aren't they? Yes. We have a number of counterclaims, and we will concede that the judgment cannot be sustained solely on the basis of the arbitration award, but on the basis of the arbitration award together with the undisputed material facts remaining in the record. All right. Don't wander off too far here. I'm sorry. I'm sorry. Just to be sure that I understand your position, you are conceding that the arbitration award did not decide the Torsh's interference or the breach of duty of good faith issues. Is that correct? Just some of the issues and some of the facts. Answer my question, please. Yes. Are you conceding that the arbitrator did not decide those two issues, Torsh's interference and breach of the duty of good faith? Do you concede that? Well, like it did not decide the ultimate issue. No, no. You're forgiving me, counsel. I don't mean to be rude, but I'd like to get this clarified. Do you agree that the arbitrator did not decide those issues? Yes. Okay. Thank you. Any other questions? I have no questions. Do you have anything? You've got 19 seconds left. No, I appreciate your time. I appreciate your argument. Thank you, sir. Thank you very much, sir. Okay. We'll hear a rebuttal from counsel. Your Honors, if you have no further questions, I simply respectfully request that this court remand the case to the trial court for trial on the issues. Thank you very much. Thank you both very much for your argument. The case of HydroPro Dutch Harbor, Inc. versus Ganmar is submitted.
judges: Kleinfeld, Smith, Smith